UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:14-CV-00172-TBR

EARLIE FUGATE                                                                                                              Plaintiff,

v.

BABCOCK & WILCOX
CONVERSION SERVICES, LLC,
JOANNA ASSAD, and JOHN WALLACE                                                               Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon the motion to remand of Plaintiff Earlie Fugate. (Docket No. 6.) Defendants Babcock & Wilcox Conversion Services, LLC, ("B&W" or "the Company") and Joanna Assad have responded, (Docket No. 9), and Fugate has replied, (Docket No. 10). Fully briefed, this matter stands ripe for adjudication. For the reasons set forth below, the Court will GRANT Fugate's motion.

**Factual Background**

On September 16, 2013, Fugate was hired as a training and curriculum developer at B&W's Paducah, Kentucky, location. Fugate contends that during the hiring process, she explained to the Company that she was pursuing an advanced degree at Murray State University that required her to complete an internship. She alleges that although she worked only a "flex schedule" at B&W during her internship period, B&W personnel nonetheless directed her to record having worked eight hours per day on her timesheets. (Docket No. 11-1 at 8.)

Fugate claims that throughout her employment at B&W, she was subjected to a hostile work environment due to her age, race, and gender. Specifically, she states that Defendants John Wallace and Joanna Assad "ridiculed and harassed" her by making racially charged statements and "sabotaging her

1

training." (Docket No. 11-1 at 8.)  Fugate says that when she complained to her superiors of this treatment, they arranged for her to meet with the human resources department.  On the day of the scheduled meeting, however, B&W terminated her employment, alleging that she falsified her timesheets.  She submits that B&W terminated her based in part upon statements of Assad and Wallace. (Docket No. 11-1 at 9.)

Fugate filed her six-count complaint in the Circuit Court of McCracken County, Kentucky.  Her first three claims concern her employment contract with B&W:  she alleges that B&W wrongfully discharged her in violation of both public policy and an employment contract and that it violated the covenant of good faith and fair dealing. (Docket No. 11-1 at 9-11.)  Fugate further contends that Assad and Wallace,[1] along with B&W, defamed her, committed the tort of outrage, and discriminated against her in violation of the Kentucky Cavil Rights Act.  (Docket No. 11-1 at 11-13.)  Defendants timely filed a notice of removal; by way of response, Fugate filed the instant motion to remand.

**Legal Standard**

Generally, a defendant may remove a civil case to federal court only if the action is one over which the federal court could have exercised original jurisdiction.  *See* 28 U.S.C. § 1441, 1446.  Because Fugate's complaint raises no federal question, the exclusive basis for federal jurisdiction is 28 U.S.C. §1332, which requires the citizenship of each plaintiff to be diverse from the citizenship of each defendant.  *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 67-68 (explaining the principle of complete diversity).  Fugate, a Kentucky citizen, is indeed diverse from B&W, a Delaware corporation with its principal place of business in Virginia.  However, Assad and Wallace are also citizens of Kentucky.  Therefore, complete diversity is lacking based on the face of Fugate's complaint.  Nonetheless, Defendants insist that Fugate fraudulently joined Assad and Wallace in an effort to defeat diversity jurisdiction and confine the case to state court.

---

[1] Although Count IV of Fugate's complaint refers to "Defendant Felker," her motion to remand clarifies that this was a typographical error and that she intended to reference Wallace. (*See* Docket No. 6-1 at 7.)

Defendants bear the burden of proving fraudulent joinder. "To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999). To carry this "heavy burden," *Mayes v. Rapoport*, 198 F.3d 457, 463 (4th Cir. 1999), Defendants must demonstrate that there is no genuine basis upon which Fugate may be able to recover against Assad and Wallace. *See Coyne*, 183 F.3d at 493 ("[I]f there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants, th[e] Court must remand the action to state court."). *See also Jerome-Duncan, Inc. v. Auto-By-Tel L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999) ("[T]he inquiry is whether [plaintiff] had at least a colorable cause of action.").

Defendants asserting fraudulent joinder confront a higher standard even than that required to prevail upon a motion to dismiss. *See Cordle v. Merck & Co., Inc.*, 405 F. Supp. 2d 800, 803 (E.D. Ky. 2005) (citing *Little v. Pardue Pharma, L.P.*, 227 F. Supp. 2d 838, 845-46 (S.D. Ohio 2002). As a sister district court in the Sixth Circuit has commented, "[T]he benefit of the doubt given a plaintiff as part of the fraudulent joinder inquiry should be more deferential than even that given under Rule 12(b)(6). . . . [A] decision overruling a motion for remand where the defendant is claiming fraudulent joinder connotes that a plaintiff's claim, as to the non-diverse defendants, has no basis in law or reason." *Little*, 227 F. Supp. 2d at 846-47.

As is always the case in matters concerning comity and federalism, any ambiguity must be resolved against removal. *See Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir. 1999) (explaining that "the statutes conferring removal jurisdiction are to be construed strictly because removal jurisdiction encroaches on a state court's jurisdiction" and that ambiguities regarding the scope of removal "should be resolved in favor of remand to the state courts."). Moreover, any ambiguities in the relevant state law must be resolved in the light most favorable to the plaintiff. *See Alexander*, 13 F.3d at 949.

The Court need not predict whether Fugate will carry the day at trial, nor must it discern Fugate's true motive in joining Assad and Wallace. Rather, the limited question before the Court is whether, resolving all ambiguities in Fugate's favor, Defendants have shown that there is no "glimmer of hope" that she could prevail against the non-diverse defendants in state court. *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 426 (4th Cir. 1999); *see also Jerome-Duncan*, 1756 F.3d at 907. Accordingly, the Court must consider the complaint in light of Kentucky law to determine whether Fugate has stated a colorable claim against Assad and Wallace.

## Analysis

Fugate does not dispute that the first three counts of her complaint concern only B&W and assert no claims against Assad and Wallace. The parties' conflict, then, concerns the claims of defamation, intentional infliction of emotional distress, and violation of the Kentucky Civil Rights Act ("KCRA"). The Court will address each of these claims in turn.

### I. Defamation

To establish a *prima facie* case of defamation, a plaintiff must show (1) defamatory language, (2) about the plaintiff, (3) which is published, and (4) which causes injury to reputation. *Columbia Sussex Corp, Inc. v. Hay*, 627 S.W.2d 270, 273 (Ky. Ct. App. 1981). Fugate's complaint alleges each of the four elements: she claims that Assad, Wallace, and B&W accused her of falsifying her timesheet, thereby uttering defamatory words about her in front of another person and thereby "published" under Kentucky law. *See id.* at 794. Moreover, she contends that the allegedly false claims damaged her reputation. Although Defendants maintain that "false statements can only be made by a corporation through its agents or employees," (Docket No. 9 at 10), they point to no authority precluding Fugate from seeking recovery from her fellow employees. Accordingly, the Court cannot say that Fugate's defamation claim lacks a basis in law or reason.

Having reached this conclusion, the Court need not devote extensive consideration to Defendants' argument that statements regarding an employee's work performance are privileged. The Court briefly notes that the privilege to which Defendants refer applies "where the communication is one in which the party has an interest and it is made to another having a corresponding interest . . . if [the communication is] made in good faith and without actual malice." *Baker v. Clark*, 218 S.W. 280, 285 (1920) (internal quotation marks omitted). Kentucky courts often apply this qualified privilege to the employment context. *See, e.g.*, *Simpson v. Lexington Fayette Urban Cnty, Gov't*, 2003 WL 22220255, at *8 (Ky. Ct. App. Sept. 26, 2003); *Dossett v. New York Mining & Mfg. Co.*, 451 S.W.2d 843, 846 (Ky. 1970). However, as the Kentucky Supreme Court recently noted, "The qualified privilege is just that: qualified." *Toler v. Sud-Chemie, Inc.*, 2014 WL 7238202, at *3 (Ky. Dec. 18, 2014). It is not an absolute defense, and a party may be deprived of its protection "through unreasonable actions amounting to abuse." *Id.* At this early stage of litigation, the Court makes no judgment as to the merits of Defendants' argument, nor does it determine whether the qualified privilege applies here. The Court concludes only that Defendants' argument does not defeat Fugate's motion to remand.

## II.   Intentional infliction of emotional distress

The Court next turns to Fugate's claim alleging intentional infliction of emotional distress ("IIED"), also known as the tort of outrage. To establish this claim, a plaintiff must prove four elements:

> (1) the wrongdoer's conduct must be intentional or reckless; (2) the conduct must be outrageous and intolerable in that it offends against generally accepted standards of decency and morality; (3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress must be severe.

*Gilbert v. Barkes*, 987 S.W.2d 772, 777 (Ky. 1999). The Restatement (Second) of Torts, which has been adopted as part of the Commonwealth's common law, explains that this tort encompasses only markedly extreme conduct:

> It has not been enough that the defendant has acted with an intent which is tortious . . . , or that he has intended to inflict emotional distress, or

> even that his conduct has been characterized by 'malice,' . . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Humana of Kentucky, Inc. v. Seitz*, 796 S.W.2d 1, 3 (quoting Restatement (Second) of Torts, § 46, Comment d). To constitute the tort of outrage, the conduct must be so egregious that it would cause an average member of the community to exclaim, "Outrageous!" when she learns the facts of the case. *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 788 (Ky. 2004). "Mere insults, indignities, threats, annoyances, petty oppression, [and] other trivialities" do not satisfy this exacting standard. *Id.*

Defendants argue that the conduct of which Fugate complains does not constitute the outrageous behavior that constitutes this tort. The Court is generally inclined to agree. Kentucky courts have taken a restrictive view of IIED claims, routinely granting summary judgment in favor of defendants. As *Stringer* summarized, Kentucky courts have found the following conduct sufficient to justify recovery:

> Where the defendants: (1) harassed the plaintiff by keeping her under surveillance at work and home, telling her over the CB radio that he would put her husband in jail and driving so as to force her vehicle into an opposing lane of traffic; (2) intentionally failed to warn the plaintiff for a period of five months that defendant's building, in which plaintiff was engaged in the removal of pipes and ducts, contained asbestos; (3) engaged in a plan of attempted fraud, deceit, slander, and interference with contractual rights, all carefully orchestrated in an attempt to bring [plaintiff] to his knees; (4) committed same-sex sexual harassment in the form of infrequent incidents of lewd name calling coupled with multiple unsolicited and unwanted requests for homosexual sex; (5) was a Catholic priest who used his relationship [as marriage counselor for] the [plaintiff] husband and wife to obtain a sexual affair with the wife; (6) agreed to care for plaintiff's long-time companion animals, two registered Appaloosa horses, and then immediately sold them for slaughter; and (7) subjected plaintiff to nearly daily racial indignities for approximately seven years.

*Stringer*, 151 S.W.3d at 789-90 (internal citations omitted). Fugate alleges that Assad and Wallace ridiculed and harassed her based on her race, sabotaged her training, and reported to B&W that she

6

falsified her timesheet. (Docket No. 11-1 at 8-9.) While this alleged behavior "may be rude, disheartening, and indignant," *Sacharnoski v. Capital Consol., Inc.*, 187 F. Supp. 2d 843, 845 (W.D. Ky. 2002), it does not appear to accord with the humiliations recited above.

Despite the Court's misgivings about Fugate's likelihood of success, however, she has nonetheless stated a colorable claim for IIED against Assad and Wallace. She has alleged that their actions were intentional or reckless, that they were outrageous and intolerable, and that they caused her to experience severe emotional distress. (*See* Docket No. 11-1 at 12-13.) Resolving all ambiguities in Fugate's favor, it is conceivable that she could prevail. For purposes of fraudulent-joinder analysis, the Court's examination need not exceed this inquiry. Because there is at least a "glimmer of hope" that Fugate may prevail, Defendants have not established that she fraudulently joined Assad and Wallace as to this count.

### III. Kentucky Civil Rights Act

Finally, Count VI of Fugate's complaint alleges that "Defendant B&W, by and through Defendants Assad and Wallace and its other employees/agents, unlawfully discriminated against the Plaintiff in regard to her treatment as to the work conditions of her employment and in discharging her, in part, because of her age, race, and gender" in violation of the KCRA. (Docket No. 11-1 at 13.) Generally, no individual liability lies for employees or supervisors under the KCRA and similar schemes. *See, e.g.*, *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 404-05 (6th Cir. 1997) (explaining that an individual employee who does not otherwise qualify as an "employer" may not be held personally liable under the KCRA). Individual liability under the KCRA arises only under KRS 344.280(1), the Act's anti-retaliation provision.

KRS 344.280(1) makes it unlawful "[t]o retaliate or discriminate in any manner against a person . . . because he has made a charge, filed a complaint, testified, assisted or participated in any manner in any investigations, proceeding, or hearing under the chapter." To prove her *prima facie* case

for retaliation, Fugate must prove that she engaged in protected activity, that Defendants knew of her exercise of civil rights, that Defendants thereafter took an employment action adverse to her, and that a causal connection existed between the protected activity and the adverse employment action. *Brooks v. Lexington-Fayette Urban Cnty. Hous. Auth.*, 132 S.W.3d 790, 803 (Ky. 2004) (citing *Christopher v. Stouder Mem'l Hosp.*, 936 F.2d 870, 877 (6th Cir. 1991), *cert. denied*, 502 U.S. 1013 (1991)).

Defendants observe that Fugate failed to reference the anti-retaliation provision at all—and even if she had, they argue that she cannot establish this cause of action against either Assad or Wallace. According to Defendants, Fugate has not alleged that either Assad or Wallace knew that Fugate had engaged in protected activity. Indeed, there is no indication that either was aware that Fugate had complained of the alleged discrimination. Although Fugate states that she notified her co-worker Ed Elder and her manager Rufus Murphy of these issues, there is no indication that she ever complained to Assad or Wallace or that they otherwise knew that she had engaged in protected activity.

Fugate does not directly refute Defendants' argument but objects to its timing. She argues that Kentucky law does not require a plaintiff to account in her complaint for all of the evidence and facts upon which she will rely. Instead, Kentucky's Rules of Civil Procedure require only that she state a claim with sufficient specificity to provide defendants with fair notice of the claims against them. The Court agrees. The Kentucky Court of Appeals has explained that under the Civil Rules' simplified notice pleading, "a complaint will not be dismissed for failure to state a claim unless it appears to a certainty that the plaintiff would not be entitled to relief under any state of facts which could be proved in support of his claim." *Pierson Trapp Co.v. Peak*, 340 S.W.2d 456, 460 (Ky. 1960) (internal citations omitted). The complaint need not state either conclusions or facts so long as it provides fair notice. *Id.* Courts must "liberally construe[]" the Rules of Civil Procedure at this stage, granting "much leniency . . . in construing whether a complaint . . . states a cause of action." *Smith v. Isaacs*, 777 S.W.2d 912, 915 (Ky. 1989).

8

Whatever the deficiencies of Fugate's complaint, it does not deprive Defendants of fair notice of the retaliation claim against them. The response that they offer here—that is, that they did not know that Fugate had complained about the alleged discrimination—is better framed in an answer to the complaint, or a motion for summary judgment or other dispositive pleading. Furthermore, if Fugate's complaint is "so vague or ambiguous" that Defendants cannot levy a responsive pleading, they may move for a more definite statement. *See* C.R. 12.05. Bearing in mind the leniency with which the Court must approach Fugate's complaint, it appears that Defendants have received the notice to which they are entitled. Because Fugate has satisfied the minimal requirements of Kentucky law at this early stage, Defendants' objections do not warrant a finding of fraudulent joinder.

### Conclusion and Order

Because complete diversity is lacking, this matter is hereby REMANDED to the McCracken Circuit Court. IT IS ORDERED that Fugate's motion to remand, (Docket No. 6), is GRANTED, and this case is STRICKEN from the Court's active docket.